JOHN MOYER, Plaintiff in error and Plaintiff below, *v.* CHRISTIAN H. SCHICK and PHILIP ZIEBER, Defendants in error and below.

Land was sold in 1839, under a judgment in favour of J., to P., the brother of J., who paid the purchase money to the sheriff. The deed was not recorded until May, 1841. Shortly after the sale, J. entered under a parol agreement to purchase, made valuable improvements, demised the premises and received the rents, until April, 1841, when he re-sold to P. in payment of debts, by an agreement not recorded. P. subsequently received the rents. In 1843, the land was sold under a judgment against J., notice being given by P., that the land was his, and the title had always been in him. The jury having found the re-conveyance by J. to P. was a *bonâ fide* sale; *held*, that the record of the sheriff's deed, after the grantee therein had sold and re-purchased, was insufficient to affect a purchaser from his grantee by parol being in possession, *with notice ;* that the mere receipt of rent by P. from tenants holding under leases from J., was also insufficient to affect him with notice of P.'s title ; that the notice at the sale was sufficient to charge the purchaser. Per BANKS, P. J., affirmed in this court, for the reasons given below.

Notice at a sheriff's sale of an unrecorded conveyance, will affect a purchaser ; *it is not* necessary to charge him with notice at the date of the judgment.

ERROR to Common Pleas of Berks county.

*June* 18. This was an ejectment brought by plaintiff for a brick house and the southern part of a lot of ground in Reading, purchased by plaintiff at sheriff's sale as the property of John Zieber, and deed made to him by the sheriff, 19th August, 1843.

It appeared in evidence that John Zieber, on the 25th August, 1837, recovered a judgment against Magdalena Kershner (in whom the title to said lot then was) for $78 33, on which judgment, process of execution was issued, and the lot was sold by the sheriff to Philip Zieber for $185. Sheriff's deed is dated 7th January, 1839 ; acknowledged 14th January, 1839 ; recorded and entered in sheriff's deed-book, May 5th, 1841. John Zieber paid the sheriff the balance of purchase money, after deducting the amount of his judgment. A few days after this sale, Philip agreed to let his brother John have the lot at what he had agreed to pay for it; whereupon John took possession and erected two brick buildings on the lot, and paid for the erection thereof with his own funds. He afterwards leased the houses and received rent for them, until April 1st, 1841 ; after which Philip received the rent. On the 4th day of May, 1841, a written agreement was entered into between John and Philip Zieber, as follows :

" Memorandum of an agreement made on the fourth day of May, 1841, between John Zieber, of the borough of Reading, Berks county, of the one part, and Philip Zieber, of the same place, of the other part, Witnesseth ; that whereas Henry Binkley, Esq., high sheriff of said county, by his deed poll, dated the seventh day of Janu-

ary, A. D. 1839, granted and conveyed to Philip Zieber in fee, a certain lot of ground on the east side of ninth street, in the said borough of Reading, containing sixty feet in breadth and two hundred and thirty feet in length, bounded by Anthony Felix on the north, and John Eisenbcise on the south, by said Ninth street on the west, and a twenty feet alley on the east, being late the property of Magdalena Kershner. And whereas John Zieber erected and built two brick dwelling-houses on said lot of ground, being one and one-half stories high, twenty-five feet front by twenty-five feet in depth each, with such other improvements as are found thereon. Being the intention of the said parties that the said lot was to be vested in the said John Zieber in fee, and the said parties having come to the agreement as follows: that is to say, the said Philip Zieber agrees to pay to the said John Zieber the sum of $1265 for the whole amount expended by him, the said John Zieber, on the aforesaid lot of ground, and which said amount is hereby accounted for, and the said Philip Zieber thereof and therefrom fully discharged; and he the said Philip Zieber put into the full possession of the premises, with all the rents, issues, and profits thereof, free and discharged from all and every further claim and demand from him, the said John Zieber, and all and every other person by, from, or under him whatsoever."

This agreement never was recorded.

There had been running accounts between John Zieber and Philip Zieber and Edward Smith, prior to 7th January, 1839, and up to October 13th, 1840, on which last day the account was settled by John Zieber's note for $979 68. On the 21st August, 1840, John Zieber opened an account with Philip Zieber, by which it appeared that John was indebted to Philip, May 4, 1841, $474 34. Defendants also gave in evidence a note for $865 67, from John to Philip, dated 2d February, 1841, due 5th May, 1841.

Philip Zieber's books showed that on the 28th June, 1841, there was a balance due by John to Philip of $690, including the $478 34 due 4th May, 1841, and credit is given on that day, " *28th June,* 1841, *By amount in note at four months,* $690." On the same 28th June, 1841, John gave his note to Philip for $1191, at four months, on which a credit of $176 34, is endorsed 20th April, 1842, after paying the commissioners of the county. In March or April, 1843, Philip Zieber paid commissioners $342 77 for five out-lots previously sold by them to John Zieber for $286, and which he afterwards sold to Philip for $1000. Of this sum John testified that $500 had been paid by Philip for shoes purchased in Philadelphia by Philip and himself in partnership, but which he took upon himself in a

few weeks after the purchase. Defendants also gave in evidence a note by John Zieber to Zieber & Smith, dated 14th February, 1840, for $980, which was discounted 27th February, 1840, in Branch Bank of Pennsylvania, and renewed from time to time until March 23d, 1843, by which time it was reduced by John Zieber to $235 23, and paid by Philip in full, April 17th, 1845. John testified that he also reduced a note in Farmers' Bank of Reading to a little over $100. It did not appear what note this was, except that it had been given to Zieber & Smith, and that they paid the balance between them.

The defendant also gave in evidence the following notice, given at sheriff's sale, to wit:

*"Notice.*

"The property now advertised and offered for sale this day by the sheriff as the property of John Zieber, situate in Reading, is the property of the subscriber; and the title to the same has always been in him, of which any person intending to purchase is hereby notified.

(Signed) "PHILIP ZIEBER.

"Reading, July 5, 1843."

The plaintiff then gave in evidence several judgments, all dated anterior to the sheriff's sale.

The plaintiff submitted the following points, upon which the court were requested to charge the jury:

"1. That notwithstanding the sheriff's deed of the property in question was made to Philip Zieber, yet if John Zieber afterwards purchased by parol of Philip Zieber, and took possession in pursuance of said purchase, and paid for the lot, and erected valuable improvements thereon; the plaintiff is entitled to recover.

"2. That the plaintiff is entitled to recover, notwithstanding the agreement of May 4, 1841; because that agreement has never been recorded, and the plaintiff being himself a judgment creditor, and his judgment prior to the sheriff's sale, and other judgments also prior to sale, and part of purchase money applied to Nagle's judgment, is not affected by the notice given at sheriff's sale.

"3. The entry of the sheriff's deed, on the 5th May, 1841, cannot avail the defendants, if the jury believe that after the date of that deed, Philip Zieber sold the lot to John Zieber, and that he paid for it, and erected the houses thereon.

"4. That the taking of the sheriff's deed in the name of Philip Zieber, the purchase money having been paid by John Zieber, and the retention of that deed by Philip Zieber, and the agreement of May 4th, 1841, must have been intended merely as a security for any debt which John might owe or have owed to Philip; and if so,

the deed and agreement constitute but a mortgage in law, and not being recorded, the judgment creditors and the purchaser at sheriff's sale are not affected by the notice given at sheriff's sale, and the plaintiff is therefore entitled to recover.

"5. The fact of Philip Zieber having leased the property after May 4, 1841, and received rent therefor, is not such possession as amounts to notice; because it was not the actual possession of Philip Zieber, and because the possession of tenant is only constructive notice of tenant's right.

"6. The note for one thousand dollars, discounted December 5, 1839, and for net proceeds of which John Zieber has credit in the books of the firm, and the other notes for which he has credit in the books of the firm, (to wit: one of $979 68, and another of $500, for which he has credit for $494 67,) not being produced, must be presumed to have been paid by John Zieber, unless there be evidence to satisfy the jury that they were not paid by him; and the only evidence on that subject is that of John Zieber himself, and David McKnight, who prove notes in Branch Bank reduced to $230, and in Farmers' Bank of Reading to one hundred dollars; one half of which last note was paid by Edward D. Smith, one of the judgment creditors of John Zieber.

"7. The agreement given in evidence by defendants is inoperative as a grant, bargain or sale, there being no words in it of grant, bargain or sale, nor of any other kind of conveyance; and it cannot operate as a release, because at the date thereof there was no estate in the land in controversy, in said Philip Zieber, nor was he then in possession thereof."

The court (BANKS, President) then charged the jury, as follows:

"Magdalena Kershner was the owner of the lands in dispute. Being indebted to John Zieber, who obtained a judgment against her, in August, 1837, said lands were levied upon and sold to Philip Zieber. The sheriff's deed to him is dated the 7th of January, 1839, was acknowledged the 14th of January, 1839, and entered the 5th of May, 1841. Immediately after Philip purchased the lands at the sheriff's sale, he agreed by parol to sell the same to John, for the amount which he had bidden for the same. John at once went into possession, and built on and improved the property. He rented out the property, and received the rents up to the 1st of April, 1841. On the 4th of May, 1841, John, by articles of agreement, sold the same to Philip, for $1265. Philip had not paid the amount of his bid, nor had he, at this time, lifted his deed.

"Soon after the date of this article, Philip gave notice to the

x 2

tenants in possession, to pay the rents to him. He has ever since received the rents, and continued in possession, up to this time.

" To January Term, 1843, Goodman obtained a judgment against John Zieber, and these lands were sold on execution process issued on this judgment, to the plaintiff in this suit. The sheriff's deed to him is dated the 14th of August, 1843, which was duly acknowledged and entered.

" The validity of these two titles is now the subject for adjudication, and the question is, which will hold the land ?

" There is proof, that at the time of the sheriff's sale, and before the land was stricken off to the plaintiff, Philip Zieber gave written notice of his claim, which was publicly read. His agreement was not on record. This makes this notice a matter of importance in this suit.

" It has been contended that this notice was not sufficient, and that it did not affect the plaintiff's right.

" It is said in the books, that whatever is sufficient to put a man upon inquiry as to the title which he is about to purchase, is, in judgment of law, notice. I would receive this declaration with some qualifications. The notice of these facts should come from the party claiming an interest in the lands. The notice should be direct, and full, as to the fact that he then owned and claimed the lands. When this is done, then inquiry on the part of him, who is about to purchase, becomes a duty. In such a case, by the exercise of ordinary diligence, a full knowledge of the requisite facts could be obtained. He being informed as to the person who claimed the land, the means of ascertaining what his title is, is placed within his reach, and if he does not make the inquiry, he purchases at his own risk. The notice, as written, was sufficiently full and complete. It was not necessary that he should set out his title, or produce it at the sale. It contains the important fact, that he then owned and claimed the lands then about to be sold by the sheriff. In giving such notice, nothing ought to be said or done, or omitted to be said or done, which would be at all calculated to mislead purchasers. This written notice, if given to the purchaser, or read to him, or in his presence, at the time of sale, and before his purchase, was sufficient notice of Philip Zieber's claim to the land, and quite enough to apprize the plaintiff of his right.

" Under the circumstances of this case, placing the sheriff's deed upon record would not be sufficient to affect the plaintiff with notice of Philip Zieber's claim to the land. Clear and unequivocal possession of lands, is notice of the title by which the possessor holds the

same. This notice does not bring to the party a knowledge of every fact connected with the title. It affects him with a knowledge of such things only, as he might have learned by making inquiry of him in possession, as to his right. Here the possession was not unequivocally in Philip. The tenants had been put in possession by John. The leases had been made by him. We, therefore, under the circumstances of this case, instruct you, that the possession of the tenants was not notice of Philip's right or claim to the land.

"At the time of the sale by John to Philip, it is said, he was indebted to him to more than the price of the lot. That this sale was made in payment of this debt. This indebtedness is an important part of this case. No money was paid. The debt is the only pretended consideration to support the sale. Was this sale an honest transaction? As to the facts, this is a leading feature in the case. Was this indebtedness honest and fair? Did this debt exist, to the amount of the price of the lands, as stipulated in the agreement? Was the price of the lands, as stipulated in the agreement, the full and fair value of the same? If this was so, then the title of Philip Zieber, under said article, would be good. If an honest debt, to the amount of the value of the land, as stated in the agreement, did not exist; or, if the value of said lot, as stated in the agreement, was not its full and fair value, then the title of Philip Zieber would not be good. If any part of said debt was not honestly due, it would be fatal to his title. Or if the sale was made with a view to defraud the creditors of John, or any of them, the title would be void; even although the debt was all honestly due, and the value fixed upon the land was its full and fair price.

"John was a brother to Philip. He was unable to pay his debts. This will make it your duty to examine this sale carefully. Such transactions are attended with suspicions. It is for you to say, whether this was an honest transaction or not. You have heard the parol proof. You will have the books and notes out with you. You will consider all the evidence, and decide it for yourselves; you are not at all bound by any thing that I have said as to the evidence or facts. (At this part of the charge all the facts were presented to the jury.—This part of the charge is here omitted.)

"Fraud must be proved; it will not be presumed. It may be made out by circumstances. Any thing that satisfies a jury that it exists, is enough. It is not enough that it is charged by counsel. Many would not make it without proof. Some, however, might do it if they were paid for it. There must be proof of fraud found in

the evidence. You have heard what has been testified to. You will examine the books and papers, and decide whether the transaction is fair, or fraudulent. If it is proved to have been fair and honest, you will find for the defendants. If it has been proved to have been dishonest and fraudulent, you will find for the plaintiff.

" The plaintiff's third, fifth, and sixth points are correct; and the court having read the same to the jury, charged them as therein requested.

" The plaintiff's first point is correct, if the jury believe that the agreement of the fourth of May, 1841, was not an honest transaction.

" The plaintiff's second point is not correct. This unrecorded agreement was not void as to subsequent judgment creditors. Therefore, if notice was given at the sale to the purchaser, before his purchase, it was in time. The fact that the plaintiff was a judgment creditor, and that his judgment was prior to the sale, and that there were other judgments prior to the sale, and that part of the purchase money was applied to the payment of Nagle's judgment, will not vary the case.

" The recording act declares unrecorded deeds void as to subsequent purchasers, and mortgagees for a valuable consideration. A judgment creditor is neither a purchaser nor mortgagee. He has no interest or estate in the land. Therefore, if notice was given to the purchaser at the sale, and before his purchase, the unrecorded agreement would not on that account alone be void as to him.

" The plaintiff's fourth point is not correct. If there was proof that the agreement of the 4th of May, 1841, was intended, by the parties to it, as a security for money which John owed Philip, then the point put would be correct. The article on its face contains no evidence of such intention. The testimony of John tends to establish no such intention. If the facts are found by you to have been proved, as they are assumed in the point to be, then the conclusion drawn would be correct. You will determine whether the facts proved establish such a state of things as is contained in this point. If they do, then the plaintiff would be entitled to a verdict.

" In answer to the plaintiff's seventh point; this article is in form sufficient to pass the title to the lands mentioned therein, from John to Philip.

" Then, to conclude; was there an honest debt due from John to Philip to the entire amount of the price stipulated between them, as the value of this lot? Was the price, as agreed between them, the fair and full value of the lot? Was the transaction a fair and honest one? If you find all these things to be so, you will render your verdict for

the defendants. If you find that there was not an honest debt due from John to Philip to the full amount of the price agreed upon for the lot, or that the price agreed upon for the lot was not its fair and full value, then your verdict must be for the plaintiff. Or, if you find that this agreement was made for the purpose of defrauding the creditors of John, or any of them; then, and in that case, although there was an honest debt due from John to Philip to the full amount of the price agreed upon for said lot, and although said price might be its fair and full value, your verdict must be for the plaintiff."

To this charge the plaintiff's counsel excepted.

In this court the following errors were assigned:

"1. The court erred in admitting in evidence the notice, which is the subject of the bill of exception.

"2. The court erred in their charge to the jury:—

"1st. In what they say with regard to the notice at the sheriff's sale, as well in the general charge as in answer to plaintiff's second point.

"2d. In charging the jury that if John Zieber was honestly indebted to Philip Zieber to the amount of price of lot stipulated in the agreement, and if that price was the full value of the lot, and the transaction was a fair and honest one, the verdict of the jury must be for defendants, and *e converso* it must be for plaintiff; thus putting the whole case upon the fairness or honesty of the transaction of May 4, 1841.

"3. In their answers to the plaintiff's first, second, fourth and seventh points.

"4. In treating the agreement of 4th May, 1841, throughout the whole charge, as an absolute sale.

"5. The fourth point was not fully answered."

*Davis*, for plaintiff in error.—The answer of the court to the first point is erroneous if even the agreement of 4th May, 1841, had been an honest transaction, which was a question of fact submitted to the jury. The agreement does not profess to reconvey the property to Philip; and the point was, that the parol sale to John, accompanied with payment of purchase money, and valuable improvements, had divested the title from Philip, and vested it in John Zieber; and thus making a re-conveyance necessary. Wiley *v.* Crist, 4 Watts, 198; Burke *v.* Allen, 3 Yeates, 351. The agreement of 4th May, 1841, is in operation as a grant, bargain, or sale. There being no words in it of grant, bargain or sale; it could not operate as a release, because

Philip had then no estate in the premises, and was out of possession; it was intended merely as a security for John's indebtedness to Philip; it was not even a conditional sale, but must have been intended as a mortgage, John having the right to redeem on payment of his indebtedness. If not so intended, why not execute deeds as usual? And, moreover, it is an unrecorded mortgage, and as such will not prevail against creditors or purchaser at sheriff's sale. Field *v.* Hamilton, 17 Serg. & Rawle, 70; Jacques *v.* Weeks, 7 Watts, 261. Notice at sheriff's sale, therefore, was too late to affect plaintiff, who was a judgment creditor, and Edward D. Smith and others, judgment creditors, whose judgments were prior to notice. At page 270 of 7 Watts, Justice Sergeant says, "and although the law, with regard to a purchaser or mortgagee with notice, is as I have stated; yet it seems to be different with regard to a judgment creditor, and the purchaser under an execution on such judgment. For it has been adjudicated by this court, that a judgment creditor takes a priority over an unrecorded mortgage. Semple *v.* Burd, 7 Serg. & Rawle, 290; and 17 Serg. & Rawle, suprà. If so, a purchaser at sheriff's sale under such judgment cannot be affected by a notice of a mortgage, which notice is given subsequently to the judgment." S. P. Manufacturers' Bank *v.* Bank of Pennsylvania, 7 Watts & Serg. 340. As to whether the agreement amounted to a mortgage or conditional sale, Mr. Davis contended that the whole transaction from the beginning and throughout, including agreement, showed clearly that Philip held John's property as security for John's indebtedness; and that no contrivance should avail to make that which at one time was but a security for money, become at another time an absolute conveyance of the estate; and cited, as establishing this principle, 1 P. Wms. 268; 3 P. Wms. 9; and 1 Vern. 191, 588; 2 Vern. 520; Kinkle *v.* Wolfersberger, 6 Watts, 130; Colwell *v.* Woods, 3 Watts, 188; and Hiester *v.* Madeira, 3 Watts & Serg. 388, in which Judge Huston refers to cases cited, and to Wharf *v.* Howell, 5 Binn. 499, and Stoever *v.* Stoever, 9 Serg. & Rawle, 484. Mr. Davis also cited Bellas *v.* McCarty, 10 Watts, 13, to show that recording acts in Pennsylvania are applicable equally to legal and equitable titles.

*Strong*, for defendant in error, was stopped by the court.

*June* 25. ROGERS, J.—The judgment is affirmed for the reason given by Judge Banks.